Filed 9/16/22  Martin B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re MARTIN B., a Person Coming Under the Juvenile Court Law. | B316531 (Los Angeles County Super. Ct. No. 19CCJP04596A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CARLOS B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernán D. Vera, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father (Carlos B.) appeals from the juvenile court's order terminating parental rights over his child, Martin B. (born Aug. 2017) under Welfare and Institutions Code section 366.26.[1] He contends that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry requirements under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In a prior dependency proceeding, the juvenile court issued a family law order granting father and mother (A.C.) joint legal custody of Martin, and father was given sole physical custody of the child. At the time of the current proceeding, father resided in paternal grandmother's home with paternal aunt, her child, and Martin.

On July 19, 2019, DCFS filed a dependency petition on behalf of Martin, and on September 16, 2019, the petition was sustained as amended by interlineation. At the time of adjudication, Martin was placed in the care of maternal great-aunt.

Appended to the dependency petition was the Indian child inquiry attachment (ICWA-010 form), which reflected that when questioned by DCFS on July 18, 2019, mother and father indicated that Martin had no known

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Our summary of the facts is limited to those needed for resolution of the ICWA issues raised on appeal and to provide relevant context.

Indian ancestry. In the detention report, DCFS stated that on July 2, 2019, father denied having any Indian ancestry. On July 22, 2019, mother and father filed a parental notification of Indian status (ICWA-020 form), each reporting "no Indian ancestry as far as I know."

At the detention hearing, the juvenile court acknowledged receipt of the ICWA-020 forms and found it had no reason to know that Martin was an Indian child, as defined under ICWA. However, the court directed the parents to keep DCFS, their attorneys, and the court "aware of any new information relating to possible ICWA status."

Mother reported to DCFS that she was raised by (recently deceased) maternal grandmother and that maternal grandfather died when she was young. Father reported he was raised by paternal grandmother.

On February 3, 2021, the juvenile court terminated reunification services and set a permanency planning hearing. On November 18, 2021, the court terminated parental rights and designated Martin's current caretakers as the prospective adoptive parents. Father timely filed a notice of appeal.

## DISCUSSION

A. *Applicable Law and Standard of Review*

ICWA[3] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).) Both ICWA and the

---

[3] Our state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. The phase at issue here is the initial duty to inquire.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS investigation. (§ 224.2, subd. (a).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.* subd. (b).) Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an Indian child." (*Id.* subd. (c).) The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

A duty of further inquiry is imposed when DCFS or the juvenile court has "reason to believe that an Indian child is involved" in the proceedings.

4

(§ 224.2, subd. (e); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884, and *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1049 (*D.S.*).) When DCFS or the juvenile court has "reason to know" an Indian child is involved, formal ICWA notice is sent to the relevant tribes. (*D.S., supra,* 46 Cal.App.5th at p. 1052.)

We review a juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

B. *Analysis*

Father contends DCFS failed to fulfill its duty of initial inquiry under section 224.2, subdivision (b),[4] because it did not ask available relatives whether Martin may have Indian heritage. DCFS concedes error, but contends the error was harmless. We agree.

"At this point in time, the California courts have staked out three different rules for assessing whether a defective initial inquiry is harmless." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777 (*Dezi C.*).) Contrary to father's contention, we believe a fourth rule recently adopted by our colleagues in *Dezi C.* is the better approach. In *Dezi C.,* the court stated that "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within

---

[4] Under section 224.2, subdivision (b), "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Id.* at p. 779.)

Here, the record does not provide a "reason to believe" that Martin is an Indian child. Rather, father and mother repeatedly denied any Indian ancestry to DCFS (orally and on the ICWA-020 form). Moreover, nothing in the record suggests any reason to believe that the parents' knowledge of their heritage is incorrect or that Martin might have Indian ancestry. Father has offered no such reason on appeal. Therefore, we conclude that DCFS's error in this case was harmless.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    WILLHITE, Acting P. J.

We concur:



COLLINS, J.



CURREY, J.

6